[Civ. No. 5603.   Fourth Dist.   Apr. 16, 1957.]

PATRICK F. PAOLA, Respondent, v. JACK B. HUSTON, Appellant.

Conron, Heard & James for Appellant.

Deadrich, Bates & Stewart and Kenneth H. Bates for Respondent.

GRIFFIN, J.—Plaintiff and respondent Patrick F. Paola brought this action against defendant and appellant Jack B. Huston for dissolution and accounting of an oral partnership agreement entered into on December 1, 1950.  The partnership was known as the "Arrow Liquor Stores."  The complaint alleged that on July 30, 1954, some difficulties arose between the partners and they entered into a written agreement (Exhibit A attached to the complaint), which, in effect, provided that:

"Solely for the purpose of arranging a settlement of all differences now existing between" them "it is proposed . . . (1) That in the event the parties hereto can arrange a sale of

the said'' five ''Arrow Liquor Stores, their leases, inventory, licenses and other assets, in their entirety, to the mutual satisfaction of the parties hereto, within sixty days from the date of execution herein, the net proceeds from such sale, after paying all outstanding bills and other indebtedness, shall be shared equally between the parties hereto, and there shall be a dismissal of the now pending Superior Court action. . . . (2) In the event no sale is agreed upon between the two parties hereto and any third party within said sixty-day period, the parties hereto agree to execute Articles of Copartnership, recognizing the equal interests of the parties hereto in said Arrow Liquor Stores, subject'' to certain specified terms set forth. It then provides: ''In the event that no sale is agreed upon between the respective parties hereto within sixty (60) days hereafter, . . . Huston shall be granted an option *for a period of one (1) year* to purchase the interest of Paola in said partnership business for a sum equal in amount to . . . Paola's capital account in said partnership venture as reflected by the books of said partnership *as of the date of the exercise of such option,* or at any other price mutually agreeable to the parties. Said option may be exercised by . . . Huston by the giving of *thirty days notice in writing* of his intention to exercise his option to purchase to Mr. Paola. . . .'' (Emphasis ours.)

The complaint then alleges that defendant elected to dissolve the partnership; that no accounting was had between plaintiff and defendant of the affairs of the partnership; that defendant withdrew funds in excess of the amount shown on the books, and that an accounting should be had. It prays for dissolution of the partnership and liquidation thereof under the court's direction, for an accounting, and distribution of the proceeds.

Defendant answered and claimed complete books were kept by him. He denied withdrawing any funds as alleged and sets up a report of a certified public accountant of the affairs of the partnership as of August 31, 1955. By way of cross-complaint he relies upon the agreement above set forth and alleges he notified plaintiff on August 24, 1955, in writing, of his intention to exercise the option to purchase plaintiff's interest in said partnership for a sum equal to Paola's capital account as reflected by the books as of that date, and alleges that the audit of August 31, 1954, was the closest audit to that date and it reflects plaintiff's balance to be $31,774.69; that defendant is agreeable to a settlement on that basis but

plaintiff has refused and has demanded a sum equal to 120 per cent of said amount. Defendant also seeks a declaration or interpretation of the agreement of July 30, 1954, in respect to the time when the 60-day period referred to expired. It is also defendant's claim that there was no express period of time to exercise the option after giving notice; and that plaintiff refused to join with defendant in the sale or transfer of the licenses for the five liquor stores until the required consideration under the agreement was paid. He prays that no further accounting be had; that the value of plaintiff's interest be fixed at $31,774.69 upon the dissolution of the partnership; that the physical assets be awarded to defendant; and in effect argues that plaintiff be required to specifically perform according to the agreement.

The matter came on for pretrial hearing and the issues were there stated to be a determination of the validity and finality of the option claimed to have been exercised and, if invalid, to the trial of the issues on the question of dissolution and accounting. It was agreed that this judge try the issue in reference to the option to purchase. By consent, defendant first presented evidence as to this claimed defense. It pertained mainly to the evidence bearing on the interpretation of the agreement, the time of the notice of offer by defendant to purchase, his financial ability to perform, and the status of plaintiff's capital account. As will be noted, the agreement dated July 30, 1954, provides for the arrangement of sale of the stores by the parties within 60 days of the date of the agreement, and if no sale is agreed upon by the parties "within sixty (60) days hereafter," Huston should be granted an option "for the period of one (1) year to purchase the interest of Paola." It does not indicate when that one-year period begins. Plaintiff contends that July 30, 1954, the date they signed, is the commencement date, and defendant argues it did not begin until the expiration of 60 days thereafter, or September 30, 1954.

The written notice of the exercise of the option was not mailed to plaintiff until August 25, 1955, more than one year after July 30, 1954, and if interpreted according to plaintiff's claim, defendant's right to exercise said option had expired. The trial court followed the interpretation that the one-year period commenced to run 60 days after July 30, 1954. It denied defendant relief on his specific performance prayer mainly because defendant did not pay the amount due plaintiff when due, did not complete performance of the option

agreement within the option period nor within a reasonable time after September 30, 1955; and found that such performance was not waived, prevented nor excused by plaintiff.

The main question is whether the evidence supports this finding. It is conceded no money was paid to plaintiff at any time. No tender of any sum was made. It is apparent that defendant attempted to negotiate a loan in the sum of $30,000 to make some payment thereon, but he was unable to do so for several reasons. The main one was that it required encumbering the property and a sale or transfer of the liquor licenses to defendant. One of these licenses had been suspended for one year for a law violation and nothing could be done about its sale or transfer. Defendant's counsel testified that on September 20, 1955, he orally told plaintiff he was representing Huston and was recording a notice of intention to transfer these licenses to Huston and asked him to go to the office of the Liquor Control Board and sign the application for transfer; that Paola referred him to his lawyer and that he told Paola Huston was exercising his option; that subsequently Paola's attorney told him Paola was not interested because the notice was too late and the amount mentioned in the audit of August 31st, 1955, was not enough; that he demanded 120 per cent of that amount; and that he told Paola's attorney he was still trying to raise the money. Paola did not remember such conversation and he said he did not "think it happened" because he referred such things to his attorney. His attorney did not testify at the trial. It rather appears from the aforesaid answers of Paola that a conversation was held between them but he stated the conversation was not what defendant's counsel claimed.

The certified public accountant testified Paola's capital account was $32,422.66 on September 30, 1955.

Assuming, as contended by defendant, his counsel did orally notify plaintiff, about September 20, 1955, that defendant intended to exercise his option, and did request plaintiff to come to the Liquor Control Board office to sign the transfer of the licenses to defendant, the obligation of the defendant was not only to notify plaintiff of this fact, in writing, but in good faith to tender to plaintiff, within the time prescribed or within a reasonable time, the full amount required under the agreement. It does appear that defendant had considerable difficulty in his endeavor to obtain a loan sufficient in amount to produce even the $31,774.69 which defendant claimed was due to plaintiff. He was unsuccessful in obtain-

ing this sum even though plaintiff contended his capital account then amounted to $32,422.66. The written notice of intention to exercise the option was not given until August 25, 1955. The contemplated purchase was not consummated within one year from September 30, 1954. In fact it was never consummated. There is a conflict in the evidence as to whether the failure to produce the money and consummate the sale was the fault of defendant or the fault of plaintiff in failing to cooperate with defendant in placing the property in a condition whereby it could be incumbered to finance the purchase. There was also a question as to whether plaintiff, by his conduct, may have waived tender, and whether it would be certain he would refuse it if offered. (12 Cal.Jur.2d p. 438, § 217; *Ferrea* v. *Tubbs*, 125 Cal. 687 [58 P. 308] ; 12 Cal.Jur.2d p. 214, § 23.) Upon sufficient evidence the court found in favor of plaintiff on these issues. Defendant did not place the contemplated sale in escrow. He furnished no substantial proof of his ability to perform. This action was not filed until October 26, 1955, was not tried until April, 1956, and there appears no tender or sufficient offer of defendant to pay plaintiff the amount claimed due by him. The court found defendant failed and refused to pay the sum equal to the capital account of plaintiff within the time prescribed or within a reasonable time thereafter, and did not waive tender of the amount claimed by plaintiff by refusing the amount suggested by plaintiff. Apparently defendant chose his own figures and stood upon that amount as a proper tender.

The remaining question is whether the court was authorized to order an accounting and made sufficient and proper findings in this respect to the accounting already made by the accountant. Plaintiff's complaint sought a dissolution of the partnership, alleged that no accounting had been had, and sought such an accounting. In defendant's answer he denies this fact and alleges that a complete audit or accounting was had between defendant and plaintiff each month and that an accounting was not necessary. It appears from the record at the pretrial hearing, that each counsel indicated that he was primarily interested in the decision on the validity of the option agreement. From the record it shows the judge remarked that if it was decided adversely to defendant it would require a trial on the other issues presented by the complaint and answer. He said:

"The defendant does not dispute the right to a dissolution and accounting except that he says there was an option run-

ning to him which he exercised and that therefore the plaintiff is obliged to convey the plaintiff's interests in the partnership to him in return for a specified sum of money. So we've agreed that we'll go ahead and try the question of this affirmative defense as it were of option, and we'll see how that works out, and as I see it one way or the other that will determine the further procedure in the case. So for that reason we'll let the defendant and cross-complainant proceed with his proof on the question of the option."

Thereafter defendant proceeded with his proof. In conformity with this procedure and without objection on the part of defendant's counsel, the case was submitted and the court found:

"The parties having entered into a stipulation in open court that if plaintiff were to prevail in this cause that no accounting need be had in this matter other than that the amounts owing to creditors and the respective accounts of the parties one against the other might be determined in accordance with the accounting of the partnership affairs as might be determined by the books and records maintained by William E. Whitely, Certified Public Accountant, and the parties having further stipulated in open court that the issues raised by the first cause of action of the cross-complaint herein might be first tried by the court and that if the court should then determine that the cross-complainant should not prevail upon the cross-complaint, that an interlocutory decree might be entered herein, decreeing the dissolution of the partnership and ordering a winding up of the affairs of the partnership in accordance with the accounting of the partnership affairs as prepared by William E. Whitely, . . . and the matter having been submitted for decision upon the written briefs of the parties; and the court, being fully advised in the premises, now makes the following: FINDINGS OF FACT."

Then follow the findings as heretofore indicated, followed by the conclusions that an accounting be made by the C.P.A. and "such accounting be reported to this court"; that an order be made directing the liquidation of the assets of the partnership, under the direction of the court and proceeds be applied in accordance with a certain formula and then the respective capital accounts be determined by said accounting. Judgment was entered accordingly and the assets ordered sold.

As we construe it defendant claims the facts indicated did not amount to a stipulation that an accounting should be had;

that the agreement was that the accounting already made by the C.P.A. would constitute the accounting; that the finding was broader in scope than the claimed stipulation; that the trial court failed to find which accounting figure of the C.P.A. was to be adopted; and that the findings are not supported by the evidence. We see no merit to the claim when the entire record and proceedings are considered in connection with the apparent agreement of the parties. It affirmatively appears that it was defendant's option agreement which was the main defense to the dissolution and accounting proceeding and in case this defendant failed in this proof, a dissolution of the partnership was intended, and some form of accounting should be had to determine the respective interests of the parties. The findings sufficiently covered the subject matter. ██ In carrying out this interlocutory decree the court was authorized to appoint a receiver.

Interlocutory judgment and order appointing receiver affirmed.

Barnard, P. J., and Mussell, J., concurred.